# UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF MICHIGAN

MALIBU MEDIA, LLC,                           )
                                             )
          Plaintiff,                         )     Civil Case No. 2:13-cv-12217-VAR-RSW
                                             )
v.                                           )
                                             )
GERALD SHEKOSKI,                             )
                                             )
          Defendant.                         )
_____        )

## PLAINTIFF'S AMENDED MOTION TO DISMISS[1]

_____

[1] Plaintiff's Motion is being amended for the sole purpose of complying with LR 7.1 and Judge Robert's requirements.

## TABLE OF CONTENTS

I.  INTRODUCTION ........................................................................................................1

II.  FACTS ...................................................................................................................1

   A.  Defendant's IP Address Was Used to Repeatedly Infringe Plaintiff's Movies .................1

   B.  The Infringement Stopped When Defendant's ISP Notified Defendant of the Infringement ....................................................................................................................1

   C.  Defendant's ISP Correlated His IP Address to Defendant ......................................2

   D.  Defendant Had a Password on His Wireless Internet ............................................2

   E.  Defendant Delayed Responding to Discovery and Producing Hard Drives ...................2

   F.  The Court Ordered Defendant to Produce His Hard Drive .....................................3

   G.  Defendant Did Not Produce All Drives Used to Connect to his Internet During the Relevant Time Period ..............................................................................................3

   H.  Defendant's Hard Drive Contained Programs Used to Commit Copyright Infringement and Over 200 Illegally Downloaded Files ...................................................................3

   I.  Evidence Demonstrates Defendant's Son May Be Liable .......................................4

   J.  Plaintiff Did Not Delay In Moving to Dismiss ....................................................4

   K.  IPP Discovered that Defendant's IP Address Started to Infringe Again on September 13, 2014 .....................................................................................................................5

III.  LEGAL STANDARD ..............................................................................................5

IV.  ARGUMENT .........................................................................................................6

   A.  Defendant Should Be Dismissed Without Prejudice ............................................6

      1.  Defendant Has Not Expended Significant Effort And Expense .........................7

      2.  Plaintiff Has Not Significantly Delayed Nor Exercised Lack of Diligence ...................8

      3.  Plaintiff has a Sufficient Explanation for Dismissal .......................................9

      4.  Defendant Has Not Filed a Motion for Summary Judgment .........................10

   B.  Defendant Should Not Be Awarded His Fees ...................................................10

      1.  The Plaintiff Acted in Good Faith in Bringing and Prosecuting the Litigation ............10

      2.  The Plaintiff Did Not Delay Filing the Motion to Dismiss ............................12

      3.  The Work Performed Can be Used in a Subsequently Filed Action ............................13

      4.  In the Event the Court Decides to Dismiss With Prejudice or Award Defendant Fees Plaintiff Must be Given an Opportunity to Withdraw the Motion ...............................13

   C.  Defendant's Actions Are Contrary to the Express Purpose of the Copyright Act............14

V.  CONCLUSION.........................................................................................................18

## TABLE OF AUTHORITIES

*ACEquip, Ltd. v. Am. Eng'g Corp.*, 219 F.R.D. 44, 45 (D. Conn. 2003) ......................................9

*Bell-Coker v. City of Lansing*, 1:07-CV-812, 2009 WL 80291 (W.D. Mich. Jan. 9, 2009) ..........6

*Bell-Coker v. City of Lansing*, 2009 WL 80291 (W.D. Mich. 2009)...........................................14

*Bridgeport Music, Inc. v. Universal-MCA Music Pub., Inc.*, 583 F.3d 948, 953 (6th Cir. 2009)...6

*Capital Records, Inc. v. O'Leary*, CV 05-406 CJC, 2006 WL 279066 (C.D. Cal. Jan. 31, 2006).7, 11

*Christian v. Michigan Dep't of Corr.--Health Servs.*, 12-12936, 2013 WL 1890740 (E.D. Mich. Mar. 21, 2013).............................................................................................................................7

*Cogent Solutions Grp., LLC v. Brown*, 2:12-CV-665, 2013 WL 6116052 (S.D. Ohio Nov. 20, 2013) ...............................................................................................................................11, 13

*Dowling v. Select Portfolio Servicing, Inc.*, 05-CV-00049, 2007 WL 2815567 (S.D. Ohio Sept. 25, 2007) .........................................................................................................................7, 12

*Elektra Entm't Grp., Inc. v. Perez*, 05-931 AA, 2006 WL 3063493 (D. Or. Oct. 25, 2006).........17

*Fluid Routing Solutions, Inc. v. Dayco Ensa, S.L.*, CIV. 09-12080, 2010 WL 363324 (E.D. Mich. Jan. 22, 2010) .....................................................................................................................8, 10

*In re Enron Corp. Sec., Derivative & ""ERISA" Litig.*, MDL-1446, 2007 WL 209923 (S.D. Tex. Jan. 24, 2007) ................................................................................................................................9

*Interscope Records v. Leadbetter*, 312 F. App'x 50, 51 (9th Cir. 2009) ......................................17

*Loud Records, LLC v. Sanchez*, CV-05-695-TUC-DCB, 2008 WL 628913 (D. Ariz. Mar. 5, 2008)...........................................................................................................................................17

*Loud Records, LLC v. Sanchez*, CV-05-695-TUC-DCB, 2008 WL 628913, at *3-4 (D. Ariz. Mar. 5, 2008).........................................................................................................................................9

*Malibu Media LLC v. John Does 1-28*, 12-CV-12598, 2012 WL 7748917 (E.D. Mich. Oct. 31, 2012)...........................................................................................................................................12

*Malibu Media v. John Doe*, 14-cv-223 (D. Md. July 30, 2014) ....................................................11

*Malibu Media v. Pelizzo*, 12-cv-22768 (S.D. Fla. Feb. 18, 2014).................................................11

*Malibu Media, LLC v. John Does 1-9*, 8:12-cv-00669-SDM-AEP [CM/ECF 25] at p. 7 (M.D. Fla. July 6, 2012)........................................................................................................................12

*Malibu Media, LLC v. Reynolds*, 2013 WL 870618 at *7 (N.D. Ill. Mar. 7, 2013) .....................12

*Mazer v. Stein*, 347 U.S. 201, 219, 74 S.Ct. 460, 471, 98 L.Ed. 630 (1954) ...............................15

*Michigan Surgery Inv., LLC v. Arman*, 627 F.3d 572, 575 (6th Cir. 2010)...................................14

*Patrick Collins, Inc. v. Osburn*, PWG-12-1294, 2014 WL 1682010 (D. Md. Apr. 28, 2014) 11, 16

*Priority Records L.L.C. v. Chan*, 04-CV-73645-DT, 2005 WL 2277107 (E.D. Mich. May 19, 2005) .................................................................................................................................8, 11, 17

*Sony BMG Music Entm't v. Tenenbaum*, 672 F. Supp. 2d 217, 234 (D. Mass. 2009).................16

*Sony v. Tennenbaum*, 2011 WL 4133920 at *11 (1st Cir. 2011)..................................................15

*Twentieth Century Music Corp. v. Aiken*, 422 U.S. 151, 156, 95 S.Ct. 2040, 2043, 45 L.Ed.2d 84 (1975)........................................................................................................................................15

*Virgin Records Am., Inc. v. Thompson*, 512 F.3d 724, 727 (5th Cir. 2008).................................17

## STATEMENT OF ISSUES

1.  Should Plaintiff's Complaint be dismissed without prejudice?

2.  Should Plaintiff's Complaint be dismissed without any conditions including costs and attorneys' fees?

## CONTROLLING AUTHORITY

*Bridgeport Music, Inc. v. Universal-MCA Music Pub., Inc.*, 583 F.3d 948, 953 (6th Cir. 2009)

*Priority Records L.L.C. v. Chan*, 04-CV-73645-DT, 2005 WL 2277107 (E.D. Mich. May 19, 2005)

*Christian v. Michigan Dep't of Corr.--Health Servs.*, 12-12936, 2013 WL 1890740 (E.D. Mich. Mar. 21, 2013)

*Fluid Routing Solutions, Inc. v. Dayco Ensa, S.L.*, CIV. 09-12080, 2010 WL 363324 (E.D. Mich. Jan. 22, 2010)

## I.    INTRODUCTION

Plaintiff respectfully requests the Court dismiss the case without prejudice and without a condition of costs and fees to Defendant.  The evidence in this case demonstrates that Plaintiff's movies were egregiously infringed over a long period of time either by Defendant or by someone in his household.   Allowing Defendant to be released of all claims when he has acted unreasonably in litigation is contrary to the purposes of the Copyright Act.  Further, discovery in this case has been minimal, Plaintiff has a valid reason for dismissal – namely that litigation is not cost effective or practical, and the limited discovery that occurred can be used again in a future case.  Consistent with this, courts throughout the country hold that defendants in peer to peer infringement actions should not recover fees if the infringement occurred in the defendant's household.  For the foregoing reasons, as set forth below, Plaintiff respectfully requests the Court grant its dismissal without prejudice.

## II.    FACTS

### A.    Defendant's IP Address Was Used to Repeatedly Infringe Plaintiff's Movies

Plaintiff's investigator IPP recorded Defendant's IP address infringing 21 different movies owned by Plaintiff over the course of more than eight months.  The infringement was continuous throughout this time.  Defendant's IP address was also used to infringe an enormous amount of third-party BitTorrent content.  Indeed, Plaintiff's investigator recorded Defendant's IP address infringing over 120 files.

### B.    The Infringement Stopped When Defendant's ISP Notified Defendant of the Infringement

On May 30, 2013 your Honor granted Plaintiff leave to subpoena Defendant's ISP, Comcast, to learn Defendant's identity.  Plaintiff issued the subpoena to Comcast on June 4, 2013 and on June 17, 2013 after more than eight months of regular and consistent BitTorrent

infringement, Defendant's infringement stopped.   Amazingly, this is the <u>exact same day</u> Defendant received the letter from Comcast notifying him of this lawsuit.  *See* Exhibit A.

### C.     Defendant's ISP Correlated His IP Address to Defendant

Comcast responded to Plaintiff's subpoena identifying Defendant as the owner of the IP address infringing Plaintiff's movies.  *Id.*  Comcast has testified in the past through its 30(b)(6) representative that it was "absolutely certain" that its correlation was correct.

### D.     Defendant Had a Password on His Wireless Internet

Defendant stated in his discovery responses that a password was necessary to connect to his Internet.  *See* Exhibit B.

### E.     Defendant Delayed Responding to Discovery and Producing Hard Drives

On November 21, 2013, Plaintiff propounded discovery and requested a copy of Defendant's hard drives.  *See* Exhibit C.    After numerous follow ups, it was not until Plaintiff informed Defendant it was preparing a motion to compel that Defendant finally responded to Plaintiff's discovery - nearly four months after it was propounded.  *See* Exhibit D.  At this time, Defendant refused to provide Plaintiff with copies of his hard drives.  In an attempt to resolve the issue, Plaintiff provided Defendant with a stipulated protective order.  *See* Exhibit E.  Defense counsel responded stating: "Paul:  I am checking to see if the hard drives at issue are even available.  I will let you know."  *See* Exhibit F.  Finally on June 30, 2014, defense demanded the "moral equivalent of an in camera inspection of [Defendant's] computer's hard drive, by using a licensed but neutral expert in computer forensics (paid for by Plaintiff)."  This request was made despite Plaintiff's reasonable proposal that it maintain all of the contents of Defendant's hard drives confidential.  Defendant then moved for a protective order.

### F.    The Court Ordered Defendant to Produce His Hard Drive

On July 21, 2014 the Court ordered Defendant to produce a mirror image of his hard drive to Plaintiff for investigating.  *See* CM/ECF 31.  In that order the Court held:

> If the forensic examination does not reveal evidence of the copyright infringement alleged in the complaint, and if there is no evidence that infringing files have been deleted, Malibu Media will dismiss its claims against the Defendant. Malibu Media must report the results of the forensic examination immediately to counsel for the Defendant. Until this occurs, all other discovery in this case is STAYED.

Plaintiff was in the process of scheduling a deposition of Defendant's son and subpoenaing Comcast for any records of third party infringement.  Because discovery was stayed, Plaintiff never had the opportunity to complete this discovery.

### G.    Defendant Did Not Produce All Drives Used to Connect to his Internet During the Relevant Time Period

Despite admitting in his interrogatories that six people in his household actively connected to his Internet during the relevant time period, Defendant only produced one hard drive for Defendant's own computer.  *See* Exhibit G.  Defendant also refused to produce his son's computer.

### H.    Defendant's Hard Drive Contained Programs Used to Commit Copyright Infringement and Over 200 Illegally Downloaded Files

Plaintiff's investigation of Defendant's hard drive revealed that Limewire had been installed on Defendant's computer.  *See id.*  It also revealed over 200 illegally obtained files that infringed on others copyrights.  *Id.*

This is in stark contradiction to Defendant's sworn discovery responses.  Indeed, in its interrogatories Plaintiff specifically asks Defendant: "Identify each person, including yourself, if applicable, whom you know, at any time in the past, has used BitTorrent *or any other type of peer-to-peer file sharing program.*"  Cite. (Emphasis added).   Defendant had illegally

downloaded music files on <u>his</u> computer for years, yet stated "I know of no one". *See* Exhibit B. Plaintiff also asked: "Have you ever knowingly downloaded a song, movie, game, software program or computer file from a file sharing service? … Examples of these types of services include … Limewire." *Id*. Defendant responded "No." *Id*.

## I.       Evidence Demonstrates Defendant's Son May Be Liable

Plaintiff's evidence suggests Defendant's son, Joe Shekoski, is also potentially liable for infringing Plaintiff's movies.  As set forth above, IPP recorded third party BitTorrent activity emanating from Defendant's IP address including music, movies, ebooks, computer programs, software, and games.  *See* Exhibit H.  This additional evidence contained the following files:

68.62.41.133   #Complete Collection of New Who books    10/23/2012

68.62.41.133   Wii.Pack.13.PAL                               05/11/2013

Joe Shekoski's facebook demonstrates that he is a Doctor Who fan.  *See* Exhibit I. Indeed, Joe Shekoski has pictures of the show and includes the show under his "likes".  *Id*.  His facebook page also "likes" several Wii games.  *See* Exhibit J.

Defendant claims that Joe Shekoski's laptop is not relevant to the litigation because it was purchased after the infringement commenced in June 2013.  *See* Exhibit B.  Defendant can't provide <u>any</u> documentation to support this.  *See* Exhibit K, Response No. 3.

## J.       Plaintiff Did Not Delay In Moving to Dismiss

On August 4, 2014 Plaintiff's expert Patrick Paige received a copy of Defendant's hard drive.  The examination process took approximately 5 to 6 weeks.  On September 11, 2014 Plaintiff submitted to Defendant a copy of Patrick Paige's report.  When providing that report, Plaintiff submitted an offer to settle for no money, so long as Defendant and his children agree to stop using BitTorrent to infringe Plaintiff's works.  *See* Exhibit L.  To ensure this, Plaintiff's

offer stated that if IPP discovered Defendant's IP address illegally downloading Plaintiff's copyrighted movies again, Defendant would stipulate to a $15,000 judgment. *Id.*

Defense counsel rejected Plaintiff's offer, calling Plaintiff's offer to settle at no cost "extortion". *See* Exhibit M. The next day Defendant moved to file a motion for leave to file a motion to dismiss Plaintiff's Complaint. This motion was denied at a status hearing because the motion was in reality was a motion to file a premature motion for summary judgment prior to the completion of discovery. *See* CM/ECF 22.

### K.    IPP Discovered that Defendant's IP Address Started to Infringe Again on September 13, 2014

On September 13, 2014, a day after Defendant moved to dismiss, IPP discovered that the Defendant's IP Address began infringing third party works again on BitTorrent. This date is significant. In fact, on September 12, 2014, defense counsel sent Plaintiff an e-mail rejecting its settlement offer and purporting to continue the litigation because "the risk of an actual downside is so low." *See* Exhibit M. The infringement resumed the very next day.

While it is possible that the IP address may have been assigned to another user because of the length of time after the ISP correlation, further evidence supports that the new infringement emanated from Defendant's household. Indeed, a recent trace of the IP address indicates the address is located in Defendant's home town. *See* Exhibit N. And, one of the movies downloaded by the IP address was the movie, The Amazing Spiderman—which is a direct match to the "likes" on Defendant's son's Facebook page. *See* Exhibit O.

## III.    LEGAL STANDARD

"When an answer or a motion for summary judgment has been served, and not all of the parties who have appeared will stipulate to dismissal, 'an action may be dismissed at the plaintiff's request only by court order, on terms that the court considers proper.'" *Bridgeport*

5

*Music, Inc. v. Universal-MCA Music Pub., Inc.*, 583 F.3d 948, 953 (6th Cir. 2009) (quoting Fed.R.Civ.P. 41(a)(2). "Dismissal *without* prejudice is 'the default outcome for grants of Rule 41(a)(2) motions.'" *Bell-Coker v. City of Lansing*, 1:07-CV-812, 2009 WL 80291 (W.D. Mich. Jan. 9, 2009). "[T]he conditions imposed' on a 41(a)(2) dismissal, 'if any, should only include what is necessary to eliminate the harm done to the defendant.'" *Bell-Coker v. City of Lansing*, 1:07-CV-812, 2009 WL 80291 (W.D. Mich. Jan. 9, 2009).

## IV.   ARGUMENT

### A.   Defendant Should Be Dismissed Without Prejudice

This Court should dismiss Defendant without prejudice because Plaintiff's evidence establishes that Defendant—or someone in his household—committed the infringement. Plaintiff's investigator recorded more than eight months of infringement originating from Defendant's IP address, all of which stopped the moment Defendant received the Comcast notice. *See* Exhibit A. Additionally, Defendant swore that he had no knowledge of anyone who used peer-to-peer filing sharing programs for downloads—yet Plaintiff's expert found one such program and over 200 illegally obtained files on Defendant's hard drive. *See* Exhibit H. And, Plaintiff's investigator has recorded new infringement. If the case were to continue, Plaintiff would seek discovery from Comcast to correlate whether the infringing IP address still traces to Defendant.

"When considering whether to grant a motion to dismiss without prejudice, a court typically considers the following factors: 'defendant's effort and expense of preparation for trial, excessive delay and lack of diligence on the part of plaintiff in prosecuting the action, insufficient explanation for the need to take a dismissal, and whether a motion for summary judgment has been filed by the defendant.'" *Christian v. Michigan Dep't of Corr.--Health*

6

*Servs.*, 12-12936, 2013 WL 1890740 (E.D. Mich. Mar. 21, 2013).  As set forth below, all of the factors support a dismissal without prejudice.

### 1.  Defendant Has Not Expended Significant Effort And Expense

The first factor weighs against Defendant because discovery in this case has been extremely limited and Plaintiff has not been responsible for any main expenses.  *See e.g. Dowling v. Select Portfolio Servicing, Inc.*, 05-CV-00049, 2007 WL 2815567 (S.D. Ohio Sept. 25, 2007) ("Despite the fact that the parties have exchanged discovery, [Defendant] does not argue that the discovery process has been unusually burdensome or expensive, or that the information [Defendant] has produced and obtained in this action will be useless in a re-filed action.")

Here, the only discovery between the parties is that Defendant responded to Plaintiff's interrogatories and requests for production and Plaintiff investigated one of Defendant's hard drives, at its own expense.  Significantly, neither Defendant, nor any of his family members have been deposed, Plaintiff has not sought additional hard drives, and Plaintiff has not deposed Defendant's Internet Service Provider.  "Very little discovery has taken place and not one deposition has been taken."  *Capital Records, Inc. v. O'Leary*, CV 05-406 CJC, 2006 WL 279066 (C.D. Cal. Jan. 31, 2006) (dismissing peer to peer infringement case without prejudice and denying fees under Fed. R. Civ. 41(a)(2)).

Further, Defendant's counsel has not been forced to respond to any significant motion work.  Indeed, the majority of the motion work in this case has been filed by Defendant, and was often unnecessary.  Defendant's Motion for Leave to File an Early Motion for Summary Judgment was inappropriate because discovery had not completed.  *See* CM/ECF 15 and CM/ECF 19.  Defendant's Motion for a Protective Order was inappropriate because Defendant

never meaningfully conferred with Plaintiff or attempted a resolution and the relief he was seeking – namely an in camera review – was improper and excessive. *See* CM/ECF 17. Indeed, Defendant's motions unnecessarily caused both parties and the Court additional expenses through litigation. "To the extent [Defendant] has incurred legal fees in this action, such fees are primarily the result of tactics designed to impede the ability of Plaintiffs to prosecute this action in an efficient manner." *Priority Records L.L.C. v. Chan*, 04-CV-73645-DT, 2005 WL 2277107 (E.D. Mich. May 19, 2005).

## 2. Plaintiff Has Not Significantly Delayed Nor Exercised Lack of Diligence

Throughout this case, Plaintiff has acted diligently and has not caused any significant delay. The only substantial delay occurred when Defendant failed to respond to Plaintiff's propounded discovery for four months. And, despite repeatedly urging Defendant to do so, Plaintiff graciously provided Defendant with an extension instead of moving to compel, avoiding additional litigation. Defendant demonstrated a lack of diligence by informing Plaintiff months after it requested his hard drives, and after Plaintiff went to the expense to submit and prepare a protective order for Defendant's review, that the hard drives may not exist. Defendant then moved the Court for an unreasonable protective order without any justification for the excessive relief requested. "Plaintiff has shown that it attempted to resolve certain issues in this case with defense counsel prior to the time the Defendant filed its dispositive motion." *Fluid Routing Solutions, Inc. v. Dayco Ensa, S.L.*, CIV. 09-12080, 2010 WL 363324 (E.D. Mich. Jan. 22, 2010). Amazingly, Defendant did not even sign or return the second protective order Plaintiff prepared after the Court's hearing and before submitting the hard drives to Plaintiff. This calls into question his motivation for seeking a protective order in the first place.

"Plaintiffs instituted this action in good faith after acquiring evidence indicating that Defendant's Internet account had been used to commit copyright infringement. Plaintiffs made clear their intent to pursue only the direct infringers. Thus any expense and effort incurred by Defendant was not the result of any unreasonable or bad faith conduct by Plaintiffs." *Loud Records, LLC v. Sanchez*, CV-05-695-TUC-DCB, 2008 WL 628913, at *3-4 (D. Ariz. Mar. 5, 2008) (dismissing Internet copyright infringement action without prejudice and denying fees).

### 3.   Plaintiff has a Sufficient Explanation for Dismissal

Plaintiff seeks dismissal not for an improper purpose, nor because it lacks the proper claims or evidence to proceed with its case, but because Plaintiff will likely never recoup its expenses or receive compensation for the infringement.  If the true infringer is Defendant's son, Plaintiff does not desire to incur burdensome and expensive litigation against an 18 year old that just graduated from high school.  And if Defendant is the infringer, defense counsel has informed Plaintiff that Defendant will declare bankruptcy.  *See* Exhibit M.

Expending tens of thousands, if not hundreds of thousands of dollars to further litigate this case, and obtain a judgment that may not be collectable is not in the best interests of justice. Courts have found support for voluntary dismissal in circumstances like this when proceeding is not practical.  *See In re Enron Corp. Sec., Derivative & ""ERISA" Litig.*, MDL-1446, 2007 WL 209923 (S.D. Tex. Jan. 24, 2007) (finding voluntary dismissal was supported by "a compelling practical purpose."  "Lead Plaintiff explained, as a practical matter, that it is dismissing [Defendant] because in essence he is judgment-proof. It insists Congress never intended to force plaintiffs to prosecute claims against judgment-proof defendants."); *see also ACEquip, Ltd. v. Am. Eng'g Corp.*, 219 F.R.D. 44, 45 (D. Conn. 2003) (granting Plaintiff's request for voluntary

dismissal where "Plaintiffs allege that they wish 'to avoid unnecessary cost and expense to all parties.'")

### 4.   Defendant Has Not Filed a Motion for Summary Judgment

Finally the fourth factor weighs in favor of Plaintiff because Defendant has not filed a motion for summary judgment.  As set forth above, the parties have not completed discovery and no dispositive motions have been filed.

### B.      Defendant Should Not Be Awarded His Fees

This Court should not require Plaintiff to pay Defendant's costs and fees as a condition of dismissal.   "Among the factors considered in determining whether to award defense costs under Rule 41(a)(2) are: (1) whether the plaintiff acted in good faith in bringing and prosecuting the litigation; (2) whether the defendant incurred substantial expenses in defending the action; (3) whether the plaintiff delayed in bringing the motion to dismiss; and (4) whether the work performed can be used in a subsequently filed action."  *Fluid Routing Solutions, Inc. v. Dayco Ensa, S.L.*, CIV. 09-12080, 2010 WL 363324 (E.D. Mich. Jan. 22, 2010).  As set forth above, Defendant has not incurred substantial expenses in defending the action.   Further, Plaintiff brought the case in good faith, promptly moved for a dismissal, and all of the discovery conducted in this case will be relevant for any future action.

### 1.   The Plaintiff Acted in Good Faith in Bringing and Prosecuting the Litigation

Plaintiff brought its suit against Defendant in good faith.  Plaintiff's expert IPP recorded Defendant's IP address infringing Plaintiff's movies over a long period of time at a rapid and significant rate.  Courts throughout the country including in this district have held that bringing suit against an individual because his or her IP address is being used to improperly infringe other's copyrights is reasonable. *See Priority Records L.L.C. v. Chan*, 04-CV-73645-DT, 2005

WL 2277107 (E.D. Mich. May 19, 2005) ("Since filing this action, Plaintiffs have taken reasonable steps to try to prosecute this case and litigate against the proper defendant(s). They brought suit against [defendant] because she was the registered user for the IP address from which the allegedly improper downloading and file sharing occurred"); *see also Malibu Media v. Pelizzo*, 12-cv-22768 (S.D. Fla. Feb. 18, 2014) ("Defendant has not done anything to disprove Plaintiff's stated motivation for filing suit, that the IP address associated with Defendant was one of the worst infringers in the world of Plaintiff's movies"); *Capital Records, Inc. v. O'Leary*, CV 05-406 CJC, 2006 WL 279066 (C.D. Cal. Jan. 31, 2006) ("the record is clear that Plaintiffs were reasonable in bringing an action against [defendant] because the Internet account used to commit the alleged in infringement was registered in her name only."); *Patrick Collins, Inc. v. Osburn*, PWG-12-1294, 2014 WL 1682010 (D. Md. Apr. 28, 2014) ("[I]t takes no great imagination to see how evidence that a file was downloaded by a certain IP address could support a plausible claim that the file was downloaded by the subscriber at that IP address... Thus it was not improper for [plaintiff] to initiate and pursue this suit against [defendant]"). Indeed, there has not ever been a case where IPP has recorded the wrong IP address. *See Malibu Media v. John Doe*, 14-cv-223 (D. Md. July 30, 2014) Transcript. P. 64-65 Ln. 24-25, 1-4 (Exhibit P).

Here, Plaintiff brought this suit for the sole purpose to stop longstanding and egregious copyright infringement. "[T]here is no indication that [its] suit was not a bona fide effort to seek redress for the alleged wrongs it perceived it suffered at [Defendant's] hands." *Cogent Solutions Grp., LLC v. Brown*, 2:12-CV-665, 2013 WL 6116052 (S.D. Ohio Nov. 20, 2013).

Further, courts throughout the country that have expressly found that Malibu Media's counsel do not engage in improper litigation tactics. "Malibu is *not* what has been referred to in the media and legal publications, and in the internet blogosphere, as a 'copyright troll' . . .

Rather, Malibu is an actual producer of adult films and owns valid copyrights, registered with the United States Copyright Office, in its works." *Id.* (Emphasis in original). Other courts have also opined that the criticism Plaintiff receives is unwarranted. "[T]he Court has also witnessed firsthand the Plaintiff's willingness to resolve cases without any monetary payment when a Defendant credibly denies infringement." *Malibu Media, LLC v. John Does 1-2, 4-8, 10-16, 18-21*, 2013 WL 1777710 (D. Colo. Feb. 12, 2013). *See also Malibu Media LLC v. John Does 1-28*, 12-CV-12598, 2012 WL 7748917 (E.D. Mich. Oct. 31, 2012) ("none of the instances of improper litigation tactics that have been brought to our attention involve plaintiff [Malibu Media] or plaintiff's counsel"); *Malibu Media, LLC v. Reynolds*, 2013 WL 870618 at *7 (N.D. Ill. Mar. 7, 2013) ("the fact that suits of this nature settle quickly does not mean there is any wrongdoing on the part of copyright owners."); *Malibu Media, LLC v. John Does 1-9*, 8:12-cv-00669-SDM-AEP [CM/ECF 25] at p. 7 (M.D. Fla. July 6, 2012) (same).

## 2. The Plaintiff Did Not Delay Filing the Motion to Dismiss

As set forth above, Plaintiff did not delay filing its motion to dismiss, nor did it push the litigation past the point where it was reasonable to do so. *See e.g. Dowling v. Select Portfolio Servicing, Inc.*, 05-CV-00049, 2007 WL 2815567 (S.D. Ohio Sept. 25, 2007) (finding filing a motion to dismiss within a month of court order was reasonable). Indeed, between providing Defendant with its expert report and moving to dismiss, Plaintiff pursued settlement discussion and discussed the appropriate resolution of the case with the Court through conferences. Plaintiff submitted its expert report to Defendant on September 11, 2014 and represented in a conference with the Court on September 16, 2014 that it intended to move to dismiss if a resolution could not be reached with Defendant.

3.   The Work Performed Can be Used in a Subsequently Filed Action

Finally, the Court should not award fees to Defendant under Fed. R. Civ. P. 41(a)(2) because the work expended by defense counsel may be used again in a subsequent action. Indeed, Plaintiff has sued the same person twice for serial infringements several times. Plaintiff calls these recalcitrant infringers "double dippers" because they did not learn their lesson during the first suit. While Plaintiff has no present intention to sue defendant again, if an IP Address used by Defendant infringes Plaintiffs' copyrights there is a good chance it will do so.  Further, the work could be used against Defendant's son, which Plaintiff could bring if this case were to continue. "[T]o the extent [Defendant] has 'incurred substantial expenses in defending this action,' [Defendant] gives the Court no indication that her work "could not be used in subsequent litigation on the same claims." *Cogent Solutions Grp., LLC v. Brown*, 2:12-CV-665, 2013 WL 6116052 (S.D. Ohio Nov. 20, 2013).  Here, Defendant's discovery responses and Plaintiff's expert reports would be relevant in any future action.  Defense counsel even admitted that the discovery will be used again.  "Since he was using the computer your expert examined prior to that time, and your expert seems to be able to identify Amber's use, he should also have been able to identify Joe's use.  So, I suppose it would be time to depose you expert-- except that will be left for the next case (against Joe, the son, opposing counsel meant)." *See* Exhibit M.

4.   In the Event the Court Decides to Dismiss With Prejudice or Award Defendant Fees Plaintiff Must be Given an Opportunity to Withdraw the Motion

Plaintiff respectfully requests that this Court dismiss this case without prejudice. However, should this Court decide to dismiss *with* prejudice or apply any conditions to the dismissal, Plaintiff must first be afforded the opportunity to withdraw this Motion and proceed with the litigation.  Indeed, proceeding with this litigation may be more beneficial to Plaintiff

13

than a dismissal with prejudice or conditions. Accordingly, Plaintiff must first be afforded the opportunity to withdraw its Motion in order to consider this option before accepting a dismissal imposing conditions or prejudice. *See Michigan Surgery Inv., LLC v. Arman*, 627 F.3d 572, 575 (6th Cir. 2010) (requiring reversal because the district court failed to provide plaintiff with "notice and an opportunity to withdraw the motion before accepting a voluntary dismissal with prejudice"); *Bell-Coker v. City of Lansing*, 2009 WL 80291 (W.D. Mich. 2009) ("Following imposition of any conditions, plaintiffs are thereafter afforded an opportunity to withdraw the request for voluntary dismissal").

**C.    Defendant's Actions Are Contrary to the Express Purpose of the Copyright Act**

Defendant had control over the Internet which was used to infringe Plaintiff's works. Defendant's router was password protected and there is not even a scintilla of evidence that someone outside the home hacked into or used Defendant's WiFi. Regardless of whether Defendant or his son committed the infringement Defendant was able to and did stop the infringement. Indeed, the infringement stopped right when Defendant first received notice of this suit.

Both Congress and the United States Copyright Office have made it clear that the suits Plaintiff brings against individual infringers are proper. In 1999 Congress intentionally amended the Copyright Act to deter individuals from infringing copyrights on the internet by increasing the statutory remedies:

> Congress did contemplate that suits like this [against individuals] were within the Act. Congress last amended the Copyright Act in 1999 <u>to increase the minimum and maximum awards</u> available under § 504(c). See Digital Theft Deterrence and Copyright Damages Improvement Act of 1999, Pub. L. No. 106-160, 113 Stat. 1774. At the time, Congress specifically acknowledged that <u>consumer-based, noncommercial use of copyrighted materials constituted actionable copyright infringement.</u> Congress found that "copyright piracy of

> intellectual property flourishes, assisted in large part by today's world of advanced technologies," and cautioned that "the potential for this problem to worsen is great."

*Sony v. Tennenbaum*, 2011 WL 4133920 at *11 (1st Cir. 2011) (emphasis added).

During her time as Register of Copyrights, Marybeth Peters gave a statement to the Senate Judiciary Committee on exactly the type of copyright infringement claims that are before this Court, highlighting the necessity for copyright holders to bring these actions.

> [F]or some users of peer-to-peer technology, even knowledge that what they are doing is illegal will not be a sufficient disincentive to engage in such conduct. But whether or not these infringers know or care that it is against the law, the knowledge that such conduct may lead to expensive and burdensome litigation and a potentially large judgment should have a healthy deterrent effect. ... For many people, the best form of education about copyright in the internet world is the threat of litigation. In short, if you break the law, you should be prepared to accept the consequences. Copyright owners have every right to enforce their rights in court, whether they are taking action against providers of peer-to-peer services designed to profit from copyright infringement or against the persons engaging in individual acts of infringement using such services.[2] (Emphasis added.)

"Copyright is based on the belief that by granting authors the exclusive rights to reproduce their works, they are given an incentive to create, and that 'encouragement of individual effort by personal gain is the best way to advance public welfare through the talents of authors and inventors in 'Science and the useful Arts.'" *Mazer v. Stein,* 347 U.S. 201, 219, 74 S.Ct. 460, 471, 98 L.Ed. 630 (1954). "The monopoly created by copyright thus rewards the individual author in order to benefit the public." *Twentieth Century Music Corp. v. Aiken,* 422 U.S. 151, 156, 95 S.Ct. 2040, 2043, 45 L.Ed.2d 84 (1975). This will not happen if the works of authors can be stolen without an effective means of deterring infringement and penalizing

---

[2] Pornography, Technology, and Process: Problems and Solutions on Peer-to-Peer Networks Statement of Marybeth Peters The Register of Copyrights before the Committee on the Judiciary 108th Cong. (2003) available at http://www.copyright.gov/docs/regstat090903.html

infringers.  "Encouraging piracy would do an immense disservice to the public purposes that animate copyright, with little commensurate gain."  *Sony BMG Music Entm't v. Tenenbaum*, 672 F. Supp. 2d 217, 234 (D. Mass. 2009).

Plaintiff respectfully submits it is always in the best interests of the Copyright Act to cause infringement to stop. Plaintiff, by bringing this suit, caused Defendant to stop the infringement and therefore accomplished one of the primary goals of the Copyright Act.

The same policy of permitting reasonable investigations, without assessing fees, exists regardless of whether the specific enforcement regime contemplates a government agency investigating and enforcing the law (like car accidents) or a private citizen investigating and enforcing the law (like victims of internet piracy.). It is the right of a victim of a tort, or the police officer representing the victim, to conduct a reasonable investigation without having to pay a suspect's or witnesse's attorneys fees. This is true even when, as here, a case is not pursued.

Considering that this suit was encouraged by Congress, accomplished one of the core purposes of the Copyright Act, and was managed in a reasonable fashion by Plaintiff, it is inconceivable how awarding Defendant, who had control over the instrumentality of infringement, and caused it to stop would further the interests of the Copyright Act.  If as Plaintiff thinks is likely, Defendant's son committed the infringement, awarding Defendant fees would not serve the interests of Copyright Act.  Instead, awarding Defendant fees would only encourage people to allow infringement to occur through the internet they control and deter reasonable investigations aimed at stopping infringement.  *See e.g. Patrick Collins, Inc. v. Osburn*, PWG-12-1294, 2014 WL 1682010 (D. Md. Apr. 28, 2014) ("[Defendant]'s choice to

16

pursue a particularly aggressive defense strategy does not constitute exceptional circumstances sufficient to warrant an attorney's fees award").

Consistent with this, courts throughout the country, including in this district, routinely deny fees to a defendant in peer to peer infringement cases when the plaintiff advanced reasonable claims and the infringement occurred by a member of the defendant's household. *See e.g. Priority Records L.L.C. v. Chan,* 04-CV-73645-DT, 2005 WL 2277107 (E.D. Mich. May 19, 2005)(denying fees under the Copyright Act in peer to peer infringement case when infringer was subscriber's daughter); *Virgin Records Am., Inc. v. Thompson*, 512 F.3d 724, 727 (5th Cir. 2008) (denying fees in peer to peer infringement case when infringer was daughter of subscriber); *Loud Records, LLC v. Sanchez*, CV-05-695-TUC-DCB, 2008 WL 628913 (D. Ariz. Mar. 5, 2008) (denying fees and granting dismissal without prejudice in peer to peer infringement case when plaintiff was unable to determine whether infringer was defendant or his daughter); *Elektra Entm't Grp., Inc. v. Perez*, 05-931 AA, 2006 WL 3063493 (D. Or. Oct. 25, 2006) (denying fees and granting dismissal without prejudice in peer to peer infringement case when another member of the household was the infringing party); *Interscope Records v. Leadbetter,* 312 F. App'x 50, 51 (9th Cir. 2009) (denying fees under the Copyright Act to a defendant dismissed without prejudice when infringer was in the household). As Ben Sheffner, noted copyright lawyer and reporter, remarked on the holding in *Interscope Records v. Leadbetter*, "it does send a message to defendants in such p2p cases that they should be forthcoming with information about infringing activity on their ISP accounts *early* in litigation. If they resist telling the whole story, and the plaintiffs find out the truth only after a lot of expensive discovery, they cannot count on having the [plaintiff] pay for their resistance."[2]

---

[2] Ben Sheffner, Copyrights & Campaigns http://copyrightsandcampaigns.blogspot.com/2009/02/record-labels-win-ninth-circuit-victory.html (February 10, 2009)

## V.     CONCLUSION

For the foregoing reasons Plaintiff respectfully requests the Court grant Plaintiff's Motion to Dismiss Without Prejudice and without any conditions.

Dated:  October 20, 2014

Respectfully submitted,

NICOLETTI LAW, PLC

By:     /s/ *Paul J. Nicoletti*
Paul J. Nicoletti, Esq. (P-44419)
33717 Woodward Ave, #433
Birmingham, MI 48009
Tel:  (248) 203-7800
E-Fax: (248) 928-7051
Email:  pauljnicoletti@gmail.com
*Attorneys for Plaintiff*

## CERTIFICATE OF SERVICE

I hereby certify that on October 20, 2014, I electronically filed the foregoing document with the Clerk of the Court using CM/ECF and that service was perfected on all counsel of record and interested parties through this system.

By:     /s/ *Paul J. Nicoletti*

## CERTIFICATE OF CONFERRAL

Pursuant to L. R. Civ. P. 7.1, undersigned counsel certifies that he has conferred with all parties or non-parties who may be affected by the relief sought in the motion in a good faith effort to resolve the issues raised in the motion and has been unable to do so.

By:     /s/ *Paul J. Nicoletti*

18