# UNITED STATES DISTRICT COURT

## FOR THE EASTERN DISTRICT OF MICHIGAN

| | | |
|---|---|---|
| MALIBU MEDIA, LLC, | ) | |
| | ) | |
| Plaintiff, | ) | Civil Case No. 2:13-cv-12217-VAR-RSW |
| | ) | |
| v. | ) | Hon. Victoria A. Roberts |
| | ) | |
| GERALD SHEKOSKI, | ) | |
| | ) | |
| Defendant. | ) | |

---

### DEFENDANT'S RESPONSE TO
### PLAINTIFF'S AMENDED MOTION TO DISMISS

NOW COMES Defendant, GERALD SHEKOSKI, and for his Response to Plaintiff's Amended Motion to Dismiss states as follows:

Defendant concurs with the motion to the extent that it seeks to dismiss the pending action for direct copyright infringement under 17 U.S.C. § 101, *et seq.* However, Defendant opposes the motion to the extent that Plaintiff asks that the dismissal be without prejudice. That is to say, Plaintiff wants the dismissal to be "without prejudice" so that Defendant will not be deemed a "prevailing party" who would be entitled to recover costs and attorneys' fees pursuant to 17 U.S.C. § 505. For the reasons set forth with more particularity in the accompanying brief, Defendant asks that this Court dismiss this action "**with prejudice**."

**BLANCO WILCZYNSKI, P.L.L.C.**          **LINCOLN G. HERWEYER, P.C.**

**/s/Derek S. Wilczynski**          **/s/Lincoln G. Herweyer**
Derek S. Wilczynski (P57079)          Lincoln G. Herweyer (P55742)
Attorney for Defendant          Co-Counsel for Defendant
2095 E. Big Beaver, Ste 400          35054 23-Mile Road, Suite 115
Troy, MI 48083          New Baltimore, MI  48047
(248) 519-9000          (586) 716-1562
dsw@blancopc.com          lgherweyer@netscape.net

# UNITED STATES DISTRICT COURT

## FOR THE EASTERN DISTRICT OF MICHIGAN

MALIBU MEDIA, LLC,                    )
                                      )
    Plaintiff,                    )    Civil Case No. 2:13-cv-12217-VAR-RSW
                                      )
v.                                    )    Hon. Victoria A. Roberts
                                      )
GERALD SHEKOSKI,                      )
                                      )
    Defendant.                    )

_____

## BRIEF IN SUPPORT OF
## DEFENDANT'S RESPONSE TO PLAINTIFF'S
## <u>AMENDED MOTION TO DISMISS</u>

Submitted by:

**BLANCO WILCZYNSKI, P.L.L.C.**          **LINCOLN G. HERWEYER, P.C.**
Derek S. Wilczynski (P57079)            Lincoln G. Herweyer (P55742)
Attorney for Defendant                  Co-Counsel for Defendant
2095 E. Big Beaver, Ste 400             35054 23-Mile Road, Suite 115
Troy, MI 48083                          New Baltimore, MI  48047
(248) 519-9000                          (586) 716-1562
dsw@blancopc.com                        lgherweyer@netscape.net

## <u>COUNTER-STATEMENT OF ISSUE PRESENTED</u>

I.  WHERE THE EVIDENCE ADDUCED DURING DISCOVERY HAS ESTABLISHED THAT DEFENDANT GERALD SHEKOSKI IS NOT THE PERSON WHO ALLEGEDLY INFRINGED PLAINIFFF'S COPYRIGHTED WORKS, AND WHERE BOTH PARTIES AGREE THAT THE CASE SHOULD BE DISMISSED, AND WHERE PLAINTIFF PREVIOUSLY OBTAINED RELIEF FROM THIS COURT ON THE ASSURANCE THAT IT WOULD DISMISS THIS CASE UNDER THESE CIRCUMSTANCES, SHOULD THIS COURT DISMISS THE CASE "WITH PREJUDICE" SO THAT DEFENDANT IS DEEMED TO BE THE PREVAILING PARTY FOR PURPOSES OF 17 U.S.C. § 505?

Plaintiff Malibu Media says:          "No."

Defendant Gerald Shekoski says:     "Yes."

## **CONTROLLING OR MOST APPROPRIATE AUTHORITY**

*Browning v. Levy*, 283 F.3d 761, 775 (6th Cir. 2002)
    --    Judicial Estoppel Requires Dismissal With Prejudice, where Plaintiff previously obtained relief from this Court by representing that it would dismiss under these circumstances


Fed. R. Civ. P. 11(b)(1)
    --    Plaintiff cannot proceed without a good faith basis to believe that Defendant Gerald Shekoski is the actual infringer


17 U.S.C. § 505
    -    Defendant has a statutory basis for seeking attorneys' fees, and is not asking for attorneys' fees to be awarded under Rule 41


Fed. R. Civ. P. 54(d)(2)
    -    The time to move for attorneys' fees authorized by statute is after   the judgment has been entered


*Shady Records, Inc. v. Source Enterprises*, 371 F.Supp.2d (S.D.N.Y. 2005)
    -    Even under Rule 41, this Court could require that the dismissal be with prejudice


*Capitol Records, Inc. v. Foster*, 2007 Dist. LEXIS 97253,
    86 U.S.P.Q.2D 1208 (WD Okl., 2007) (Exhibit C)
    -    Notwithstanding Plaintiff's unpleaded and unsupported allegations that Defendant's son infringed their works, in a case remarkably similar to that factual scenario, the defendant parent was allowed to recover attorneys' fees under 17 U.S.C. § 505 after it was determined that her daughter was the infringer

ii

# TABLE OF CONTENTS

COUNTER-STATEMENT OF ISSUE PRESENTED ...................................................   i

CONTROLLING OR MOST APPROPRIATE AUTHORITY ....................................   ii

TABLE OF CONTENTS ...........................................................................................   iii

INDEX OF AUTHORITIES ......................................................................................   iv

STATEMENT OF FACTS

      Introduction and Summary of Issue ....................................................................   1

      Background ...........................................................................................................   3

      Response to Plaintiff's "Facts" ..........................................................................   8

ARGUMENT ..............................................................................................................   14

CONCLUSION ...........................................................................................................   19

CERTIFICATE OF SERVICE

EXHIBITS

      A    =      Gerald Shekoski work records during period of record infringement

      B    =      Receipt for purchase of Joe Shekoski's computer

      C    =      *Capitol Records, Inc. v. Foster*, 2007 LEXIS 97253, 86 U.S.P.Q.2D (BNA) 1208 (WD Okl. 2007)

      D    =      *Malibu Media v John Doe*, Case Nos. 13-C-536, 13-C-544, 13-C-779 (E.D. Wis.), Sanctions Order entered 12/12/13

## INDEX OF AUTHORITIES

**Cases**                                                                    **Page(s)**

*Bridgeport Music, Inc. v. Rhyme Syndicate Music,*
    376 F.3d 615 (6th Cir. 2004) ................................................................1

*Browning v. Levy,*
    283 F.3d 761 (6th Cir. 2002) ..............................................................17

*Capitol Records, Inc. v. Foster,*
    2007 Dist. LEXIS 97253,
    86 U.S.P.Q.2D 1208 (WD Okl., 2007) (Exhibit C) ........................................13, 18

*Colombrito v. Kelly,*
    764 F.2d 122 (2d Cir. 1986) ..............................................................15

*Elbaor v Tripath Imaging, Inc.,*
    279 F.3d 314 (5th Cir. 2002) ..............................................................16

*John Evans Sons, Inc. v. Majik-Ironers, Inc.,*
    95 F.R.D. 186 (E.D. Pa. 1982) ............................................................15

*Malibu Media v John Doe,* Case Nos.
    13-C-536, 13-C-544, 13-C-779 (E.D. Wis.) (Exhibit D) ..................................6, 7

*Reynolds v. Comm'r,*
    861 F.2d 469 (6th Cir. 1988) ..............................................................17

*Shady Records v. Source Enterprises,*
    371 F.Supp.2d (S.D.N.Y. 2005) ......................................................15-16

*Smoot v. Fox,*
    353 F.2d 830 (6th Cir. 1965),
    cert. denied, 384 U.S. 909, 86 S. Ct. 1342, 16 L. Ed. 2d 361 (1966) ..................15

*Teledyne Indus., Inc. v. NLRB,*
    911 F.2d 1214 (6th Cir.1990) ..............................................................17

**Statutes and Rules**

17 U.S.C. § 101, *et seq.* ...................................................................1

17 U.S.C. § 505 ......................................................................3, 13, 19

Fed. R. Civ. P. 11(b)(1) ...............................................................18, 19

Fed. R. Civ. P. 26(f) ........................................................................10

Fed. R. Civ. P. 41(a)(2) ................................................................1, 18

Fed. R. Civ. P. 54(d)(2) ....................................................................15

Fed. R. Civ. P. 56 ......................................................................17, 19

FRE 104(b). .....................................................................................1

## Other Authorities

5 J. Moore, Moore's Federal Practice (2d ed. 1948 & Supp. 1984) ..................................15

9 C. Wright & A. Miller, Federal Practice & Procedure (1971 & Supp. 1984) ...............15

## STATEMENT OF FACTS

**Introduction and Summary of Issue.** This a direct infringement[1] case brought under the Copyright Act, 17 U.S.C. § 101, *et seq.*, by Plaintiff, Malibu Media, Inc. ("Plaintiff" or "Malibu") against Defendant Gerald Shekoski ("Defendant" or "Mr. Shekoski"), for allegedly using a peer-to-peer file sharing program to either download or upload 21 of Plaintiff's pornographic "movies" between the dates of August 16, 2012 and March 26, 2013. Plaintiff has moved to dismiss this case pursuant to Fed. R. Civ. P. 41(a)(2) without prejudice. This brief sets forth the reasons and this Court's authority for why the dismissal should be with prejudice.

According to Plaintiff, it had what it believed to be evidence that someone accessing internet service (using, e.g., a wireless router) through an account that utilized the IP address 68.62.41.133 had infringed some of its works. Although that is not currently Defendant's IP address (his IP address is 68.83.193.56), it may have been the IP address assigned to his account by Comcast Cablevision on March 26, 2013 at 11:55:26 UTC (i.e., 6:55:26 am EST).[2]

Despite not knowing whether the IP address at issue was assigned to Defendant during the entire period of record infringement, and despite having no evidence that it was Defendant,

---

[1] To establish a direct infringement claim, Plaintiff would have to prove that Defendant was actually the person who engaged in the infringement. By contrast, "[c]ontributory infringement occurs when one, with knowledge of the infringing activity, induces, causes, or materially contributes to the infringing conduct of another." *Bridgeport Music, Inc. v. Rhyme Syndicate Music,* 376 F.3d 615, 621 (6th Cir. 2004). Also, "[a] defendant can be held vicariously liable if he enjoys a direct financial benefit from the infringing activity and has the right and ability to supervise the infringing activity." *Id.* Here, there is no question that if there was infringement of Plaintiff's works, Defendant had no prior knowledge of it, he did not induce anyone to do it, and he did not obtain a financial benefit from it.

[2]   Plaintiff subpoenaed Comcast for information as to whom the IP address was assigned as of that particular second, and that is all the information that Plaintiff has in that regard. Plaintiff concedes the practice by service providers like Comcast of periodically re-assigning IP addresses, and yet, consistent with its prior irresponsible conduct, it pretends it has "evidence" that Mr. Shekoski's "IP address started to infringe gain on September 12, 2014." (See Plaintiff's Amended Motion, Facts subsection K). However, Plaintiff does not even have the factual foundation for conditional relevancy under FRE 104(b)

Gerald Shekoski, who engaged in the alleged infringing (if it occurred), Plaintiff alleged (based on nothing more than a calculated risk) that Defendant *was* the infringer (see Doc. 5, ¶23).

Moreover, as early as February 27, 2014, Defendant provided Plaintiff with what should have been conclusive proof that he was **not** the alleged "serial infringer."  That is, Defendant supplied Plaintiff's counsel with (*inter alia*) all of the time records of when he was actually at work at Intertape Polymer Group (IPG) in Marysville, Michigan for the period between August 16, 2012 through March 26, 2013.  (Exhibit A).  Had Plaintiff's counsel bothered to correlate these records with the times of the alleged infringement (as Defendant's attorneys did, and expressly advised Plaintiff's counsel to do), Plaintiff would have been aware that on multiple occasions when infringement was alleged to have occurred using Defendant's internet service in New Baltimore, Defendant, himself, was physically located more than a half hour away in Marysville, and was otherwise occupied making duct tape for his employer.

In any event, here we are, 18 months after Plaintiff knew it was taking a calculated risk by suing someone who only *might* have been the infringer (i.e., a likely candidate, in Plaintiff's view), and nine months after Plaintiff conclusively knew or should have known that Defendant was not the infringer, and after Defendant's attorneys have spent well over 100 hours of their time defending him, and after Plaintiff demanded to (and was permitted to) copy and scrutinize the contents of Defendant's hard drive, and after Plaintiff then tried to extort Defendant into agreeing to a $15,000.00 judgment based on some unspecified leverage,[3]  and now, after Plaintiff finally concedes what Defendant has always known and professed (i.e., that he is not the

---

[3] The hallmark of an implicit threat is that the one issuing it does not actually articulate what injury they intend to inflict.  In this case, it is not that Defendant and his counsel were too dense to understand the threat (e.g., "we have evidence to link your daughter to wrongdoing, so you better pay us money"), it is just that Defendant cannot perceive why this Plaintiff would have any standing to assert the rights of others, regarding alleged wrongs committed by someone else, where claims based on that conduct are time barred.

infringer), now—after all of that, Plaintiff wants to dismiss the case *without prejudice*.

Why *without* prejudice?  It is so that Plaintiff will not have to face the same peril of having to pay attorneys fees under 17 U.S.C. § 505 that it waves in the face of every defendant it sues.  In other words, Plaintiff wants one set of rules to apply if discovery shows a defendant to be an infringer, but it wants a different set of rules to apply when discovery reveals that the defendant is not the infringer.

Indeed, Plaintiff's business model and professed strategy appears to be that an innocent defendant should still have to pay if he or she can be smeared with "guilt by association" regarding the alleged but unproven acts of others for whom the defendant has no legal responsibility.  Further, apparently Defendant was supposed to have (in Plaintiff's view) acted as Plaintiff's unpaid and involuntary investigator, with his entitlement to escape liability not being dependent on whether he was the infringer or not, but on whether he discovered who actually did the infringing and "ratted" that person out (so to speak) to Malibu.  While that type of coercion might not be uncommon inside of a prison (e.g., "if you don't stab that guy, then we'll stab you"), it is hardly the type of behavior that should be endorsed or rewarded by a federal court.

**Background.**  Before addressing (in the next subsection) Plaintiff's "facts" seriatim, Defendant will briefly present a summary of certain events in a manner that might prove useful to the Court when drafting an opinion disposing of this matter.

Plaintiff Malibu Media is a California company apparently formed by Brigham Fields and Collette Pelissier Fields to produce pornographic films featuring actual graphic sexual intercourse with no plot and little, if any, dialogue.  It is also a prolific, for-profit copyright infringement litigator that has, since 2012, filed over 2000 copyright infringement suits involving peer-to-peer filing sharing.  In 2013, more than one third of the copyright infringement cases

filed in the United States were filed by Malibu.  With the exception of one proceeding in Pennsylvania, Malibu has never taken any of its cases to trial.  Rather, it settles all of its cases, sometimes with the aid of non-lawyer third party "settlement negotiators," who are essentially debt collectors who work the phones for Malibu to try and pressure defendants (particularly unrepresented ones) to settle.  Malibu is adept at leveraging the threat of linking people to pornography lawsuits, and the threat of statutory damages, to obtain quick settlements.

Meanwhile, Defendant is a father and grandfather in his mid-fifties who works in a factory that makes duct tape and who has never engaged in peer-to-peer file sharing in his life. Defendant never heard of BitTorrent prior to the filing of this lawsuit and could never find any trace of any of the files identified in Exhibits B or C to Malibu's Amended Complaint on his computer.  Indeed, as this case sits today, even Plaintiff and its counsel now concede that they do not believe that Defendant committed any infringement of their works, which should be borne in mind when considering the following events.

This case was commenced on May 17, 2013 with essentially the same anonymous Complaint that Malibu uses in all of its cases.  (Doc.1.) The Complaint set forth in some detail the manner in which peer-to-peer file sharing occurs through the use of the BitTorrent file distribution network (*id*., ¶¶ 8-16), and then alleged that Plaintiff's investigator (a German company called IPP Ltd.) established a direct connection to a computer at the IP address identified in the caption, and downloaded from that computer the digital media files identified in an attached Complaint Exhibit A (*id*.,¶¶ 17-21).

The linchpin allegation in the Complaint is that (at least in Plaintiff's view) the John Doe subscriber who pays the internet bill is the most likely infringer and, therefore, Plaintiff alleges that he *is* the infringer.  (Doc. 1, ¶ 24.)

4

At the same time that Malibu filed its Complaint, it filed (as it does in all of its actions) an ex-parte motion for early discovery (Doc. 3.)  On May 30, 2013, this Court entered a "text only" order permitting Malibu to serve a third party subpoena prior to the Rule 26(f) conference.

On June 4, 2013, Malibu issued a subpoena to Comcast Cable Holdings, LLC, to produce the name, telephone number and address of the person who had the IP address of 68.62.41.133 on March 26, 2013 at 11:55:26 UTC (i.e., 6:55 am EST).

On June 17, 2013, Comcast sent a letter to Defendant advising him of this lawsuit, enclosing a copy of the subpoena, and further advising that, absent a motion to quash the subpoena or similar effort by Defendant, it would tender the requested information to Malibu. When Defendant received said letter, he immediately made inquiries to his family members and his neighbor, Andrew Ottjepka, who lives across the street from Defendant and who works for Comcast supervising the installation of Wifi service.[8]  All of these individuals disclaimed any specific knowledge as to what the suit was about, and the Complaint itself was not included with Comcast's mailing.

On August 14, Plaintiff filed an Amended Complaint, substituting Defendant's name and address in place of the "John Doe" information in the original Complaint.  (Doc. 5.)  With such modifications, the linchpin allegation by Plaintiff ( i.e., that because Defendant is the one with the internet account he must be the infringer) is Paragraph 23 (Doc. 5, ¶ 23.)

On September 3, 2013, the Amended Complaint was served on Defendant by virtue of delivering it to his wife, Carolyn Shekoski, at his house in New Baltimore, Michigan.  (Doc. 7.) Defendant read the Amended Complaint, and thereafter questioned each of his family members with regard to whether they knew what this case was about and/or whether they had been

---

[8]   Defendant's neighbor, using his own tablet device, was able to identify and access Defendant's router while standing on the street in front of Defendant's house.

illegally downloading copyrighted works, whether through BitTorrent or any other file sharing program. Each of these individuals offered assurances that they had not done so, and Defendant believes that they were truthful. Defendant also attempted to re-opened a dialogue on the subject with his across-the-street neighbor who works for Comcast, but this time his neighbor indicated that he did not want to get drawn into or otherwise become involved in this lawsuit.

After obtaining legal representation, and at the request of his attorney, Defendant went to the Human Resources Department of his employer, Intertape Polymer Group (IPG) in Marysville, Michigan, and obtained copies of the records of when he was actually at work during the period of alleged infringement (August 16, 2012 through March 26, 2013). (Exhibit A). These records were provided to Plaintiff, in discovery, on or about February 27, 2014. A comparison of Defendant's work records reveals that, on multiple occasions, Defendant was at work at the times that Plaintiff alleges someone used his at-home internet account to infringe its copyrights using BitTorrent.

In addition, Plaintiff attached to its Amended Complaint (as it did to the initial Complaint) its infamous "Exhibit C" (Docs. 1-3 and 5-3). Complaint Exhibit C purports to enumerate the results of an expanded surveillance of Defendant's IP address, i.e., it purports to list works other than those at issue in this case that have been downloaded or uploaded by someone using (or appearing to use) Defendant's internet account.[9]  While other courts have

---

[9]  Other federal district courts have *sua sponte* sanctioned Plaintiff for attaching such exhibits to the Complaint. See *Malibu Media v John Doe*, Case Nos. 13-C-536, 13-C-544, 13-C-779 (E.D. Wis.), Sanctions Order entered 12/12/13 (Exhibit D). Interestingly, Plaintiff tried to avoid sanctions in that case by arguing that it has taken corrective action by moving to seal Exhibit C in previously-filed cases, and also because it has instructed counsel nationwide to never file Exhibit C with a complaint again (see *id.*, p 9). This Court can take judicial notice that Plaintiff has not moved in this case to seal its Complaint Exhibit C and that, therefore, it appears to have falsely represented the contrary to Judge Randa of the United States District Court for the Eastern District of Wisconsin.

6

sanctioned Plaintiff for using this coercive tactic, it appears that in the instant case that Plaintiff's use of Complaint Exhibit C has backfired.

First, although Plaintiff did not provide the time of day when the "hits" listed on its Complaint Exhibit C occurred, it is likely that (consistent with the supposed hits listed in its Complaint Exhibit A), Defendant's work records again showed that Defendant was at work in Marysville (more than a half hour away) when the Complaint Exhibit C events occurred—and Plaintiff, which had access to the times of day for the "hits" on Complaint Exhibit C, had every reason to know as of February 27, 2013 that they had sued the wrong person.

Secondly, even if this Court were to buy into the explanation that Plaintiff has offered other courts as to why it creates and attaches a record of its "expanded surveillance,"[10] using it for that purpose exculpates your instant Defendant. Specifically, and as evinced in Defendant's responses to discovery, your instant Defendant is a 54-year-old father and grandfather, Catholic of Polish descent who enjoys golf and using his computer to play Texas Hold'em. Nowhere on Plaintiff's Complaint Exhibit C is any video or movie suggesting this profile (e.g, there are no golf videos or instruction videos for on-line poker). By contrast, the works listed on Complaint

---

[10]   Judge Randa of the District Court for the Eastern District of Wisconsin paraphrased Plaintiff's explanation as follows:

> In a lengthy memorandum, Malibu Media explains that it hired a company called IPP International to expand the universe of .torrent files that are scanned as part of Malibu Media's pre-suit investigation. The result is Exhibit C, which is used as a cross-reference tool to help paint a picture of the alleged infringer. By comparing publicly-available information about the subscriber with the information in the cross-reference tool, Malibu Media asserts that is able to confirm or deny that the subscriber is the actual infringer. For example, if Malibu Media learns that the subscriber is a fan of the Chicago White Sox who enjoys fly fishing, and the cross-reference tool shows that four White Sox games and a how-to manual for fly fishing were downloaded using the subscriber's IP address, Malibu Media can use this information to prove that the subscriber was the individual who infringed its copyrights. [*Malibu Media v John Doe*, Case Nos. 13-C-536, 13-C-544, 13-C-779 (E.D. Wis.), Sanctions Order entered 12/12/13, p 5.]

7

Exhibit C seem to describe an individual who speaks Arabic (and probably French) in addition to English, and is either Islamic or has an interest in Islam. They also describe an individual with substantial computer sophistication who would use materials as *Linux - Teach yourself KDE in 24 hours* and *!! Programming - Write Great Code, Volume 2 Thinking Low Level Writing High Level*. In point of fact, the person described by Plaintiff's Complaint Exhibit C is **NOT** Defendant nor anyone in his family.

Mr. Shekoski's attorneys put Plaintiff on notice from the beginning that that they would be seeking attorneys' fees under 17 U.S.C. § 505 if Malibu did not voluntarily dismiss its case against Mr. Shekoski. Yet Plaintiff's attorney literally laughed at those warnings, claiming that everyone it sues makes the same "threat" and they all turn out to be guilty. Hence, despite early evidence that Mr. Shekoski was not the infringer, and despite warnings that Plaintiff was proceeding at its own peril, and despite ***all*** of the evidence in this case providing conclusively that Shekoski did not illegally download any of Plaintiff's pornography, Plaintiff is now attempting to avoid its legal responsibility to pay attorney fees through its now-pending a motion that is both factually and legally inaccurate and misleading.

**Response to Plaintiff's "Facts."** The Factual Development portion of Plaintiff's Motion is broken down into lettered subsections. Mr. Shekoski responds as follows:

**a.     There Is No Evidence That Defendant's IP Address Was Used To Repeatedly Infringe Plaintiff's Movies, and Defendant is Not an IP Address.**

Malibu Media claims that its "investigator IPP recorded Defendant's IP address infringing 21 different movies owned by Plaintiff." However, Malibu Media has not provided this Court with any evidence to support that allegation. Moreover, the only correlation that Comcast provided Plaintiff in response to a subpoena is that on March 26, 2013 at 11:55:26 UTC (i.e., 6:55:26 am EST), the IP address 68.62.41.133 was associated with Mr. Shekoski's account.

Plaintiff has already demonstrated the fallacy of its reasoning by suggesting that Mr. Shekoski's IP address began infringing again in September 2014, at a time when the at-issue address was no longer assigned to him.   More importantly, Malibu Media *did not* bring a case against "Defendant's IP address."   Malibu Media is well aware that an IP address, while ostensibly assigned to an individual, may be used by many third parties.   Malibu Media is essentially engaged in circular reasoning-- *it is right to treat Mr. Shekoski as if he were the only one who uses his IP address because we believe that someone using his IP address did something wrong.*

> **b.     It Is Irrelevant That The Infringement Stopped When Defendant's ISP Notified Defendant Of The Infringement.**

According to Malibu, thirteen days after it issued a subpoena to Comcast to identify Shekoski's ISP, "Defendant's infringement stopped."   But this is the same party who views it to be highly significant that whoever now has Mr. Shekoski's old IP address downloaded a Spiderman movies on September 13, 2014.   Malibu sees what it wants to see:   the rooster's crow made the Sun come up; if your crops fail your neighbor must be a witch.   Maybe (and only *maybe*) after Mr. Shekoski questioned his family and neighbors, it took thirteen days for knowledge of the lawsuit to filter back to the real culprit.   However, that is evidence of Mr. Shekoski's innocence, not of his guilt.

> **c.     There Is No Documentation To Support Plaintiff's Claims That, "Defendant's ISP Correlated His IP Address To Defendant".**

Malibu Media has provided no documentation to support its statement that, "Comcast has testified in the past through its 30(b)(6) representative that it was 'absolutely certain' that its correlation was correct."   That without providing some type of proof for this statement, it is irrelevant and cannot be relied upon by this Court.   It may be true that, "in the past," Comcast's corporate representatives have testified that its "correlation was correct," but that does not mean

that, in Mr. Shekoski's case, this correlation is correct.  Moreover, as noted, the purported correlation was only for a particular moment in time, not for the whole period of record infringement, and certainly not for the period afterward.  As noted, the IP address that is presently being tracked by Plaintiff does not belong to Mr. Shekoski.

### d.      It Is Irrelevant That Defendant Had A Password On His Wireless Internet.

It is true that Shekoski stated in his discovery responses that his internet was password protected--but password protection is not foolproof, as anyone whose email has been hacked can attest.  It is not just possible, but likely, that a third party downloaded the pornography at issue because this pornography was not discovered by Plaintiff's expert on Shekoski's computer. People often allow visitors to their homes access to their wifi (e.g., to save on data when accessing the internet through smart phones), and once a device captures the password it can be stored in memory and shared with others.

### e.      It Is Irrelevant That There Was A Small Delay In Responding To Discovery.

On a further attempt to smear Shekoski's, Plaintiff notes that discovery proceeded for some period before Shekoski's hard drive was examined by Plaintiff's experts.  This is nothing more than a red herring --but Plaintiff's factual assertions still need to be corrected.

First, almost immediately after the 26(f) conference, Plaintiff propounded its boilerplate, overly broad discovery requests, such that they were due right at Christmas.  Given the scope of what Plaintiff was seeking, and the need for Defendant to ask his employer to give him all of his time records, a response by the end of February was not inordinately long.  Second, the terms of what Defendant wanted in a protective order regarding the hard drive were spelled out in objections served with the responses in February-- not four months later in June, as Plaintiff suggests.  It was only after Plaintiff would not agree to Defendant's terms that Defendant moved

10

for a protective order.  <u>Third</u>, Plaintiff attaches an email string that (while referencing this case in the subject line) included communications concerning two different cases.  The sentence cited by Plaintiff about checking to see if certain hard drives were still available appears to concern a case pending in the Western District of Michigan. Mr. Shekoski was informed by his counsel (Mr. Herweyer) immediately of his obligation to preserve evidence and there was never any doubt about whether his hard drive was still available.

The fact of the matter is that Mr. Shekoski's hard drive *was* examined by Malibu Media's experts, and no pornography belonging to Malibu Media (or any pornography, for that matter) was found on Mr. Shekoski's computer.

###### f.      The Court Ordered Shekoski To Produce His Hard Drive.

It is true that on July 21, 2014, the Court ordered Mr. Shekoski to produce a mirror image of his hard drive to Plaintiff for examination.  However, Malibu Media's point that it was in the process of scheduling a deposition of Shekoski's *son* and subpoenaing Comcast for any records of third party infringement is beyond ludicrous.  Clearly, Malibu Media is telling this Court that it was using the discovery process in Mr. Shekoski's case, and forcing Mr. Shekoski to endure costs, solely for the purpose of trying to determine which third party, if any, illegally downloaded Malibu Media's pornography.  On the basis of this admission alone, Malibu should be forced to pay Mr. Shekoski's costs and attorney fees.

###### g.      Defendant Produced Every Hard Drive that Was His To Produce And In His Home During The Relevant Time Period.

Stunningly, Malibu Media accuses Shekoski of only producing one hard drive, as if he was under some duty or obligation to produce hard drives belonging to other people, or which not only belong to someone else but which were not even purchased until after the period of record infringement.  Mr. Shekoski produced the hard drive for the one computer which

11

belonged to him.  Malibu, for some inexplicable reason, expected Mr. Shekoski to produce hard drives which did not belong to him, for which he had no possession or control, and for which he had no ownership interest.  Like it did prior to proceeding with its case against Shekoski, Malibu Media expected Shekoski to act as their private detective and ferret out who may have illegally downloaded Malibu Media's pornography.  It is not Shekoski's duty, obligation, or expectation to do that.  His only obligation is to establish that it was not him.

As for Plaintiff's parting shot of "Defendant also refused to produce his son's computer," perhaps Plaintiff forgets that its discovery requests contained detailed definitions, one of which defined "computer devices" as any item on a long list of devices "within the possession and control of you during the time of infringement."  Since Mr. Shekoski's son's computer was not even ordered from Walmart until August 5, 2013 it did not fall within the definition of "computer device" given by Plaintiff.  Nonetheless, Defendant informed Plaintiff about the existence of said computer, and why it was not relevant (and it, still, is not relevant).

### h.    It Is Irrelevant That Shekoski's Hard Drive Contained Media Other Than Malibu Media's Pornography.

The crux of Malibu Media's Motion is an allegation that Shekoski's hard drive had over "200 illegally obtained files infringed on others (sic) copy rights."  There is so much wrong with this statement that it is hard to even determine where to begin.  First, Malibu Media has produced no evidence that the "200 illegally obtained files" were actually illegally obtained.  At issue are 200 songs which Malibu Media claims were downloaded from a peer-to-peer file sharing service called "Lime Wire" by a user other than Mr. Shekoski (his daughter, who was then a minor) However, what Malibu Media is obviously forgetting is that these songs could have been songs which were purchased legally and then and shared from one computer to another.  In other words, it is possible that Mr. Shekoski's daughter was sharing her own files, which is not illegal.

12

Second, and perhaps even more important, the "200 illegally obtained files" ***are not*** the Malibu Media files at issue.  Malibu Media went on a fishing expedition in hopes that it could extort money from Mr. Shekoski by shaming him into paying a settlement or risk the exposure of having allegedly downloaded pornography.   However, Mr. Shekoski stood firm and did not cave into Malibu's extortion attempts.   Rather, he ***proved to Malibu*** that he had not downloaded Malibu's pornography.   Now, faced with the prospect of costs and attorney fees, which are substantial, Malibu is trying to wriggle out of the consequences that it has brought upon itself.

### i.    There Is No Evidence That Defendant's Son May Be Liable, Which Is, Nonetheless, Irrelevant, Immaterial, And Offensive.

Malibu believes that the "evidence suggests" that Joe Shekoski, Gerald Shekoski's son, may be "potentially liable" for infringing Plaintiff's movies.  Again, like every other argument raised by Malibu Media this "factual" allegation is irrelevant, immaterial, and, again, offensive to Gerald Shekoski.  Malibu Media sued *Gerald Shekoski* individually, ***not*** his son, Joe Shekoski. As the case of *Capitol Records, Inc. v. Foster*, 2007 Dist. LEXIS 97253; 86 U.S.P.Q.2D 1208 (WD Okl., 2007) (Exhibit C) clearly indicates, if what Malibu suspects were to be true (which it is not), Mr. Shekoski would still be entitled to get prevailing party status, and thereafter collect his costs and attorneys' fees under 17 U.S.C. § 505.  Gerald Shekoski produced all hard drives which were owned by him.  If Malibu Media wishes to "roll the dice" and sue Joe Shekoski, it is not precluded from doing so (but if it does, there will come a time when Malibu we will be back before this Court trying to dismiss its case against Joe Shekoski *without* prejudice).

Gerald Shekoski was under no legal requirement to produce Joe Shekoski's computer.  It was not his to produce, and since it was not even in the house during the period of record infringement, it did not fall within Plaintiff's own definition of "computer device."  Similarly, Plaintiff's citation to Defendant's discovery Response No. 3 (Plaintiff's Exhibit K) is in apposite.

13

That response specifically noted it was relying on Plaintiff's definitions, and that no documents could be found regarding the purchase of the computer that Malibu later examined (which was the only computer that either Mr. Shekoski, or his son Joe, used during the period of record infringement).   What Plaintiff does not tell this Court is that it's own examination of Mr. Shekoski's hard drive reveals to them the scope and extent of Joe's use of the subject hard drive during the relevant period-- just as it revealed that the song files downloaded years ago had been associated with use by Mr. Shekoski's daughter.

Nonetheless, and although Plaintiff never requested it from Defendant during discovery, Mr. Shekoski was able to obtain from Walmart a copy of the receipt for the purchase of his son Joe's computer, which is attached hereto (Exhibit B).  It was purchased on August 5, 2013, and delivered on August 9, 2013.

As for the fact that Joe Shekoski likes Dr. Who and Wii games, one wonders how that distinguishes him from any young man his age-- or undersigned's age.  Moreover, what Malibu fails to explain that the Joe Shekoski does **not** fit the profile of the alleged infringer-- he does not speak French or Arabic, he has no discernible penchant for Islamic history, and has neither the education nor experience to make use of such downloads as:  *Linux - Teach yourself KDE in 24 hours* and *!! Programming - Write Great Code, Volume 2 Thinking Low Level Writing High Level*.  Malibu appears to love making unverifiable accusations.

## ARGUMENT

I.  **WHERE THE EVIDENCE ADDUCED DURING DISCOVERY HAS ESTABLISHED THAT DEFENDANT GERALD SHEKOSKI IS NOT THE PERSON WHO ALLEGEDLY INFRINGED PLAINIFFF'S COPYRIGHTED WORKS, AND WHERE BOTH PARTIES AGREE THAT THE CASE SHOULD BE DISMISSED, AND WHERE PLAINTIFF PREVIOUSLY OBTAINED RELIEF FROM THIS COURT ON THE ASSURANCE THAT IT WOULD DISMISS THIS CASE UNDER THESE CIRCUMSTANCES, THIS COURT SHOULD DISMISS THE CASE "WITH PREJUDICE."**

As noted briefly before, Plaintiff has presented its argument to this Court as if the decision before it were whether this Court should award attorneys' as a condition of dismissal without prejudice under Rule 41.  While it is true that attorneys fees *can* be awarded under that rule, that type of award would apply to *any* action pending in this Court-- not just in actions where there is a statutory basis for an award of fees. As one court explained:

> Fee awards are often made when a plaintiff dismisses a suit without prejudice under Rule 41(a) (2). See 5 J. Moore, Moore's Federal Practice, para. 41.06, at 41-74 (2d ed. 1948 & Supp. 1984); 9 C. Wright & A. Miller, Federal Practice & Procedure § 2366, at 177-80 (1971 & Supp. 1984). The purpose of such awards is generally to reimburse the defendant for the litigation costs incurred, in view of the risk (often the certainty) faced by the defendant that the same suit will be refiled and will impose duplicative expenses upon him. See *Smoot v. Fox*, 353 F.2d 830, 833 (6th Cir. 1965), cert. denied, 384 U.S. 909, 86 S. Ct. 1342, 16 L. Ed. 2d 361 (1966); *John Evans Sons, Inc. v. Majik-Ironers, Inc.*, 95 F.R.D. 186, 191 (E.D. Pa. 1982) .

*Colombrito v. Kelly*, 764 F.2d 122, 133 (2d Cir. 1986).

However, Defendant will not be relying on Rule 41 to seek attorneys' fees, and the question of attorneys' fees is not actually before this Court at this time.  That is, when Defendant is ultimately determined to the prevailing party in this case, he will move, pursuant to Fed. R. Civ. P. 54(d)(2), within 14 days of the judgment, for attorneys' fees.  However, the substantive basis for such fees will not be Rule 41, but rather 17 U.S.C. § 505.

Consequently, Plaintiff has presented this Court with nothing but inapposite authority regarding the factors as to whether attorneys' fees should be awarded under Rule 41, e.g., denying that it acted in bad faith.  That question, while debatable, is simply not germane to what is before this Court.  The only question is whether the dismissal should be with or without prejudice-- and that determination, while within this Court's discretion, does not turn on such factors as addressed by Plaintiff.  See *Shady Record v. Source Enterprises*, 371 F.Supp.2d

15

(S.D.N.Y. 2005) (dismissal required to be with prejudice where trial two weeks away).

Moreover, Plaintiff is being coy when it cites the general rule that if a court demands that a dismissal be with prejudice, then the plaintiff should be permitted to withdraw the motion to dismiss.  See, e.g., *Elbaor v Tripath Imaging, Inc.*, 279 F.3d 314, 320 (5th Cir. 2002).  Ours is not a situation where Plaintiff simply had a change of heart and moved to dismiss without prejudice.  This Court will recall that in July, Defendant asked this Court to have an independent expert perform a surrogate "in camera inspection" of his hard drive, and also asked for permission to file an early motion for summary judgment, which would have challenged the allegation that just because Defendant paid the internet bill that it was more likely than not that he was the alleged infringer--particularly in light of his work records indicating that he was 30 minutes away from home when infringing was allegedly going on.

But Plaintiff argued to this Court that it had to have its own expert examine Plaintiff's hard drive, because its expert was so good that he would be able to tell with certainty whether Defendant was the infringer or not.  And Plaintiff argued that this Court should not permit Defendant to file an early motion for summary judgment because it was unnecessary--because if Plaintiff's expert did not find the necessary inculpatory evidence on Defendant's hard drive, then Plaintiff would dismiss the case.  On the basis of those representations, this Court entered an order giving Plaintiff what it wanted (his own expert examining the hard drive, and denial of permission to file an early motion for summary judgment), but it converted Plaintiff's representation (i.e., that it would dismiss under the circumstances as they ultimately unfolded) into an obligation.

Hence, what is really at issue here is a question of judicial estoppel.  "The doctrine of judicial estoppel bars a party from (1) asserting a position that is contrary to one that the party

has asserted under oath in a prior proceeding, where (2) the prior court adopted the contrary position 'either as a preliminary matter or as part of a final disposition.'" *Browning v. Levy*, 283 F.3d 761, 775 (6th Cir. 2002) (quoting *Teledyne Indus., Inc. v. NLRB*, 911 F.2d 1214, 1218 (6th Cir.1990)). The Sixth Circuit "has stressed that the doctrine of judicial estoppel is utilized in order to preserve 'the integrity of the courts by preventing a party from abusing the judicial process through cynical gamesmanship.'" *Id*. at 776 (quoting *Teledyne Indus.*, 911 F.2d at 1218). "[T]he evil to be avoided is colorfully described as 'the perversion of the judicial machinery,' 'playing fast and loose with the courts,' 'blowing hot and cold as the occasion demands,' and 'having one's cake and eating it too.'" *Id.* (quoting *Reynolds v. Comm'r*, 861 F.2d 469, 472 (6th Cir. 1988)) (internal alterations omitted).

Consequently, Rule 41 is not actually the underlying basis for the dismissal here-- it is simply the basis articulated *by Plaintiff* for the dismissal.  At the most recent telephone conference, Defendant's counsel specifically inquired as to whether the Court wished to entertain cross-motions to dismiss, or simply let Plaintiff proceed with its motion (seeking dismissal without prejudice, followed by Defendant's response as to why the dismissal should be with prejudice.  Consequently, Defendant should be excused as to procedural deficiency in not having brought its own motion for dismissal under, e.g., Rule 56, inasmuch as Defendant is simply following this Court's order(s).

Nonetheless, the substantive bases for dismissal are as follows: <u>First</u>, if someone infringed Plaintiff's copyrighted works using Defendant's IP address, it was not Defendant.  He can prove he was many miles away at work during some of the times that Plaintiff claims the infringement occurred, and Plaintiff's search of Defendant's computer hard drive adduced no evidence of the alleged infringement.

17

Second, Plaintiff has conceded that it does not now believe that Defendant is the infringer, and it is contrary to the Federal Rules of Civil Procedure, see, e.g., Fed. R. Civ. P. 11(b)(1), for Plaintiff to proceed with this action against Defendant in the absence of a good faith belief that it is well founded.  Third, it must be remembered that this process of Plaintiff examining Defendant's hard drive and then being permitted to proceed or dismiss based on what was found was a substitute for Defendant being able to submit an early motion for summary judgment under Rule 56.  Hence, the dismissal is actually predicated on the fact that this substitute process resulted in the determination that there is no material question of fact that Plaintiff cannot prove that Defendant infringed its works.

Fourth, not only should Plaintiff be judicially estopped from not dismissing under these circumstances, but the assurance to this Court that it would dismiss would be illusory if Plaintiff was only required to dismiss under circumstances where it could immediately refile at its own discretion.  Implicit in the notion that the instant dismissal is *required* (as opposed to being truly voluntary, i.e., at Plaintiff's sole discretion) is that the dismissal be *with prejudice*.  Absent that feature, it cannot actually be said that the dismissal was *required*.

Consequently, while Plaintiff wants this Court to view this motion, procedurally speaking, as one based only on Rule 41, what is actually before this Court are cross-motions for dismissal, based collectively on Rules 11, 41 and 56, as well as the doctrine of judicial estoppel and this Court's inherent authority.

As for Plaintiff's belabored arguments as to its (erroneous) suspicions that Joe Shekoski infringed its works, this Court should consider the remarkably similar case (i.e., similar to the facts as Plaintiff presumes them to be) of *Capitol Records, Inc. v. Foster*, 2007 U.S.Dist LEXIS 97253; 86 U.S.P.Q.2D 1208 (WD Okl.  2007) (Exhibit C).  In the plaintiff in *Foster* was a music

18

producer that sued a woman named Debbie Foster and her daughter on the theory that they had unlawfully downloaded the plaintiff's musical works over the internet. Ultimately, it was determined that it was the daughter that did the downloading, and the case against Debbie Foster was dismissed with prejudice. As the prevailing party (with regard to the claim against her), Debbie Foster was later awarded $68,685.23 in attorneys' fees under 17 U.S.C. § 505. *Foster, supra*. Hence, when Plaintiff tells this Court *we think Defendant's son did it*, what this Court should hear is *we think we owe Defendant attorneys' fees under 17 U.S.C. § 505*.

This Court should bear in mind, however, that the question of attorneys' fees under the Copyright Act is not currently before this Court, see Rule 54(d)(2), and Plaintiff will have an opportunity to apprise this Court as to how it should exercise its discretion under 17 U.S.C. § 505 at the appropriate time. Moreover, the question of whether this case should be dismissed should not be in doubt either, since that conclusion is compelled by doctrine of judicial estoppel (or even equitable estoppel), together with Rules 11 and 56. The only question is whether the dismissal should be with or without prejudice-- and since these proceedings have resulted in the undeniable determination that Plaintiff cannot prove that Defendant Gerald Shekoski infringed its works, then the dismissal should be with prejudice, as a thing adjudicated.

## CONCLUSION

**WHEREFORE**, Defendant respectfully requests a dismissal with prejudice.

**BLANCO WILCZYNSKI, P.L.L.C.**

**/s/Derek S. Wilczynski**
Derek S. Wilczynski (P57079)
Attorney for Defendant
2095 E. Big Beaver, Ste 400
Troy, MI 48083
(248) 519-9000
dsw@blancopc.com

**LINCOLN G. HERWEYER, P.C.**

**/s/Lincoln G. Herweyer**
Lincoln G. Herweyer (P55742)
Co-Counsel for Defendant
35054 23-Mile Road, Suite 115
New Baltimore, MI  48047
(586) 716-1562
lgherweyer@netscape.net

19

## **PROOF OF SERVICE**

The undersigned certifies that a copy of the foregoing document was served upon all counsel at their above-captioned addresses on the 10th day of **_NOVEMBER_**, 2014 _via:_

_____ U.S. Mail          _____ Express Delivery
_____ Facsimile          _____ Hand Delivery
_____ Email              √ **_ECF_**

and declares under penalty of perjury that this statement is true to the best of her information, knowledge and belief.

**_Freda A. Noble_**
**_Freda A. N0ble_**